COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: June 3, 2015
Date Decided: August 13, 2015

Gregory V. Varallo, Esquire
Rudolf Koch, Esquire
Kevin M. Gallagher, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

John L. Reed, Esquire
Scott B. Czerwonka, Esquire
DLA Piper LLP
1201 N. Market Street, Suite 2100
Wilmington, Delaware 19801

Re:     *Albert A. Gore, et al., v. Al Jazeera America Holdings I, Inc.*,
        Civil Action No. 10040-VCG

Dear Counsel:

This action arises from the sale in early 2013 of Current Media, LLC (the "Company"), formerly the owner and operator of the Current TV television network, to Defendant and Counterclaim Plaintiff Al Jazeera America Holdings I, Inc., a subsidiary of Al Jazeera Media Network (together with its affiliates, "Al Jazeera"), pursuant to the merger agreement executed on December 6, 2012 and amended on January 2, 2013 (the "Merger Agreement").[1] It generally concerns the rights of the Plaintiffs, representing the Company's former members, to receive cash held in escrow from that sale under the Merger Agreement, and, inversely, the

_____

[1] What was formerly the Current TV television network now operates under Al Jazeera as the Al Jazeera America television network.

rights of the Defendant, the buyer, to retain that cash as indemnity under the Merger Agreement.[2] The dispute centers around five "Claim Certificates," as that term is used in the Merger Agreement, submitted to Plaintiff Joel Hyatt, the representative for the Company's former members, by the Defendant on June 27, 2014, five days before the escrow was set to expire, which Claim Certificates purport to make claims for indemnification from the escrow; these are the DISH Claim Certificate, the DirecTV Claim Certificate, the AT&T Claim Certificate, the CBS/TWC Claim Certificate, and the Defense Costs Claim Certificate. The DISH Claim Certificate, the DirecTV Claim Certificate, and the AT&T Claim Certificate all deal with the Company's representations in the Merger Agreement as to its compliance with the "most favored nation" (or "MFN") obligations in its distribution agreements with its distributors, which agreements the Defendant took over from the Company in the merger.[3]

---

[2] The Merger Agreement created two escrow accounts, one for the purpose of satisfying any costs and judgments arising from enumerated, then-ongoing litigation, and one for purposes of satisfying all remaining indemnification obligations in the Merger Agreement, including breaches of the Company's representations and warranties. *See* Gallagher Aff. Ex. A § 2.2(a). This litigation concerns only the latter, general escrow account, and that is the escrow account I refer to in this Letter Opinion.

[3] The MFN clauses in these distribution agreements require the content provider (*i.e.*, Al Jazeera) to provide service to the distributor (*e.g.*, DirecTV) on economic terms at least as favorable as the terms on which the content provider provides service to any other third-party distributor. The clauses also require the content provider to notify the distributor if it has offered a more favorable economic term to a third-party distributor, permit the distributor to amend the agreement to adopt that more favorable economic term, and permit the distributor to audit the content provider's compliance with its MFN obligations.

2

The Plaintiffs have moved under Rule 12(c) for judgment on the pleadings as to certain counts of their Complaint and as to all counts of the Defendant's Counterclaims. I heard an initial oral argument on that Motion on February 3, 2015, during which the parties focused primarily on the issue of whether the Defendant had forfeited its right to be indemnified for the events underlying the DISH Claim Certificate, the DirecTV Claim Certificate, and the AT&T Claim Certificate because those events constituted "Third Party Claims," as that term is used in the Merger Agreement, and because the Defendant failed to give Hyatt notice of the events and the opportunity to control or participate in their defense as was required for Third Party Claims in Section 8.10 of the Merger Agreement. Following the argument, I ruled from the bench that the language of Section 8.10 is ambiguous as to whether the claims described in these Claim Certificates constitute Third Party Claims; I further noted that, even if these claims were Third Party Claims, I could not say, as a matter of law, that the Defendant's failure to provide timely notice of the claims materially prejudiced the former members of the Company, which material prejudice is required by Section 8.10 in order for untimely notice to affect the Defendant's right to indemnification for these claims.

Following the February 3rd argument, I asked the Plaintiffs to submit a letter outlining the issues remaining in their Rule 12(c) Motion. The Plaintiffs submitted that letter on February 6, presenting eleven issues for further adjudication. I heard

3

additional oral argument on the issues laid out in that letter on June 3, 2015, after which I delivered a decision from the bench for all of the issues save two. Those two issues pertain only to the DISH Claim Certificate and the DirecTV Claim Certificate, and are, as stated by the Plaintiffs: (1) "whether the 'placeholder' claims [in these Claim Certificates] purporting to reserve escrow funds for hypothetical claims or demands by 'other' distributors or parties constitute valid claims for indemnification;"[4] and (2) "whether [these Claim Certificates] are facially defective because they fail to state the maximum amount that [the Defendant] reasonably believes will be incurred, as required by Section 8.8(a)(ii)."[5] Before I could issue a ruling on these two issues, however, the Defendant filed a Motion for Reargument, pursuant to Court of Chancery Rule 59(f), as to one portion of my June 3rd bench ruling, which also concerned the DirecTV Claim Certificate. I heard oral argument telephonically on that Motion on June 29, 2015.

This Letter Opinion addresses the Defendant's Motion for Reargument as well as the remaining two issues in the Plaintiffs' Motion for Judgment on the Pleadings. It is, perhaps, worth pointing out that the issues before me are doubly preliminary: I must determine, based on the pleadings, whether further litigation will ensue over whether funds will remain in escrow, pending an eventual

---

[4] Letter to the Court from Gregory V. Varallo dated February 6, 2015 ¶ 1.
[5] *Id.* ¶ 4.

4

determination of whether the Plaintiffs were in breach of contractual representations and warranties such that the Defendant is entitled to permanently take possession of those funds as indemnification. Notwithstanding the preliminary stage of the proceedings, the issues in this litigation have been hotly contested.

*A. Claim Certificates at Issue*

### 1. DirecTV Claim Certificate

In the DirecTV Claim Certificate, the Defendant informed Hyatt that DirecTV, LLC ("DirecTV") had conducted an MFN audit of the Defendant; that the audit uncovered MFN violations; that these violations related almost entirely to the period prior to the merger; that DirecTV was demanding $28.5 million for these violations; and that, as a result of DirecTV's allegations, certain of the Company's representations and warranties in the Merger Agreement concerning its compliance with its MFN obligations were untrue.[6] The DirecTV Claim Certificate asserts that, as a result of these alleged breaches of representations and warranties, the Defendant has incurred approximately $420,000 in attorneys' fees and expenses; that it reasonably estimates it "may incur or pay additional such Damages in the future" of up to $32 million to resolve the dispute with DirecTV; and that it "reasonably believes it may incur or pay additional such Damages in the

---

[6] Compl. Ex. 3.

5

future as a result of other distributor affiliates asserting claims similar to those asserted by [DirecTV]."[7] As to these other claims, the DirecTV Claim Certificate provides only that "[t]he other distributor affiliates who may assert claims similar to those asserted by [DirecTV] include, but are not limited to, NWI Television, Inc. and Satellite NWI Television, Inc. (together, "Comcast")," and that "[i]f such claims are asserted by Comcast, the amount at issue would be comparable to the $28.5 million being sought by [DirecTV]."[8]

## 2. DISH Claim Certificate

In the DISH Claim Certificate, the Defendant informed Hyatt that DISH Network, LLC ("DISH") had notified the Defendant that it was aware of a $10 million payment the Company had made to DirecTV prior to the merger to secure DirecTV's consent to the Defendant taking over the distribution agreement between Current TV and DirecTV; that DISH had demanded the same flat fee cash payment from the Defendant pursuant to the MFN clause in the distribution agreement the Defendant took over from the Company; that the Defendant believes both "that it will eventually be required to make a payment to DISH" and "that it will eventually be required to make payments to each of its other affiliate distributors" due to "its ongoing interactions with its affiliate distributors, including the process for auditing [the Defendant's] compliance with the MFN

---

[7] Id.
[8] Id.

6

obligations in its contracts with those affiliate distributors, and the requirement to annually certify compliance with the MFN obligations;" and that, as a result of DISH's allegations, certain of the Company's representations and warranties in the Merger Agreement concerning its compliance with its MFN obligations were untrue.[9] The DISH Claim Certificate asserts that, as a result of these alleged breaches of representations and warranties, the Defendant has incurred $1.37 million in attorneys' fees and expenses and may incur an additional $5 million in future attorneys' fees and expenses, and that it may be required to make payments of up to $40 million, "as each of the [three other] affiliate distributors with applicable MFN rights may assert, as DISH has done, that it is entitled to the 'same flat fee cash payment.'"[10]

### B. Motion for Reargument

I first turn to the Defendant's Motion for Reargument. "To prevail on a motion for reargument under Rule 59(f), the moving party must demonstrate either that the court overlooked a decision or principle of law that would have controlling effect or that the court misapprehended the facts or the law such that the outcome of the decision would be different."[11] A court will not grant a motion for reargument if the motion is merely a rehash of arguments already made or if the

---

[9] Compl. Ex. 2.
[10] *Id.*
[11] *Zutrau v. Jansing*, 2014 WL 6901461, at *2 (Del. Ch. Dec. 8, 2014).

7

motion raises new arguments that the moving party failed to present in a timely way.[12]

Many of the issues presented in the Plaintiffs' February 6th letter concerned whether the five Claim Certificates at issue are facially invalid according to Section 8.8(a) of the Merger Agreement,[13] which section provides:

> On or before the last day of the General Escrow Period . . . [the Defendant] may deliver to the Members' Representative a written notice signed by an authorized officer of [the Defendant] (a 'Claim Certificate'):
>> (i) stating that an Indemnified Party has incurred or paid, or that it reasonably believes it will incur or pay Damages;
>> (ii) stating the amount of such Damages (which, in the case of Damages not yet incurred or paid, may be the maximum amount reasonably believed by [the Defendant] to be demanded by a third party, incurred or paid); and
>> (iii) specifying in reasonable detail (based upon information then possessed by [the Defendant]) the nature of the claim to which such Damages are related.[14]

---

[12] *E.g.*, *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 975581, at *1 (Del. Ch. Mar. 4, 2010).

[13] *See* Letter to the Court from Gregory V. Varallo dated February 6, 2015 ¶¶ 2–5, 7–8.

[14] Gallagher Aff. Ex. A § 8.8(a). The Merger Agreement defines "Damages" as:
> the amount of any loss, claim, deficiency, demand, damage, injury, liability, settlement, judgment, award, fine, penalty, fee (including reasonable Representatives' fees), charge, cost (including reasonable costs of investigation), Tax, or expense of any nature, whether or not involving a Legal Proceeding, including any costs of defending a Legal Proceeding or enforcing an Indemnified Party's rights under this Agreement and interest on any of the foregoing from the date incurred until paid at the prime rate published from time to time by the Wall Street Journal (but excluding any consequential, incidental, indirect, special, exemplary, enhanced or punitive damages or losses (in tort, contract or otherwise), including loss of future revenue, income or profits or loss of business reputation, except to the extent the Company is liable to a third party claimant for any such damages or losses).

*Id.* § 1.1, at 4.

The Defendant seeks reargument of my June 3rd bench ruling as to one such issue, "[w]hether the . . . DirecTV claim certificate[] [is] facially defective as to those Damages which Al Jazeera says it 'may incur' because [it] fail[s] to state that Al Jazeera reasonably believes it 'will' incur Damages, as required by Section 8.8(a)(i)."[15] As to that issue, I denied the Plaintiffs' Rule 12(c) Motion, finding that, although the DirecTV Claim Certificate does not comply with the unambiguous contract language in Section 8.8(a)(i), the determination of whether this defect should invalidate the Claim Certificate must await further factual development as to whether the defect is material:

> The parties bargained for and agreed to an escrow account system that required a certification that in the buyer's good-faith opinion, it was reasonable that there would be damages, "will," not "may." "May" is a substantially, it seems to me, different term, requiring a substantially different determination on the point of view of the buyer, and it wasn't, as I see it, what was bargained for. What was bargained for was the use of the word "will."
> . . . [H]aving used "may" in the context of the particular claim certificate that is at issue, it is clear it was not in compliance with the contract, but the question is[,] is it a material defect which prevents the claim certificate from being effective. I suspect that it is. But this is a motion for judgment on the pleadings, and I am going to allow the buyer to put on evidence to demonstrate to me, if it can, that it is not a material defect in the context of the claim that is actually presented.
> To be clear, I don't think the contract is ambiguous, and it is clear there is a lack of full compliance with the contractual language, and I am not rewriting the contract. What I need to determine is whether

---

[15] Letter to the Court from Gregory V. Varallo dated February 6, 2015 ¶ 5. This issue originally also concerned the AT&T Claim Certificate but was mooted as to that Claim Certificate by my ruling on one of the other issues presented on June 3rd. *See* Oral Arg. Tr. 76:14–21 (June 3, 2015).

9

the defect is material and should prevent the efficacy of the claim certificate. And that, despite my reservations as to whether that pursuit will be successful, I am going to allow the buyer to pursue going forward and at trial.[16]

The Defendant contends that I erred by finding that the DirecTV Claim Certificate was defective for a lack of a statement that the Defendant believed it *will* incur Damages, stating instead that it believed it *may* incur Damages.[17] The Defendant argues that I "overlooked two important points" in reaching that conclusion.[18] First, the Defendant argues that I failed to consider that if the events underlying the DirecTV Claim Certificate constitute a Third Party Claim under the Merger Agreement—which issue is still live pursuant to my February 3rd bench ruling—then the DirecTV Claim Certificate is conforming because Section 8.10 of the Merger Agreement "states that any notice of a Third Party Claim provided by Al Jazeera 'shall describe the Third Party Claim in reasonable detail and shall indicate the estimated amount, if reasonably practicable, of the Damages that have been or *may* be sustained by the indemnified Party.'"[19] Essentially, the Defendant argues that Section 8.10 dictates the form and notice requirements for making claims for indemnification against the escrow account where a Third Party Claim is involved, and that these requirements are different from and exclusive of the

---

[16] Oral Arg. Tr. 94:13–95:17 (June 3, 2015).
[17] Def.-Countercl. Pl. Al Jazeera America Holdings I, Inc.'s Mot. for Reargument at 1–2.
[18] *Id.* at 2.
[19] *Id.* at 3 (quoting Gallagher Aff. Ex. A § 8.10 (emphasis added by Defendant)).

10

requirements for claims representing non-Third Party Claims under Section 8.8(a); that the DirecTV Claim Certificate is in compliance with the form and notice requirements of Section 8.10; and thus that the determination of whether the DirecTV Claim Certificate is defective must await a determination as to whether it involves a Third Party Claim.[20] Second, the Defendant argues that, even if I find that the DirecTV Claim Certificate involves a non-Third Party Claim, "the conflict between the wording of Section 8.8(a) and of Section 8.10" creates an ambiguity as to the meaning of the notice provisions in each of these sections.[21] The Defendant contends that I improperly overlooked this ambiguity in ruling as a matter of law that the Defendant's affirmation in the DirecTV Claim Certificate—that it "reasonably believes that it may incur or pay additional such Damages in the future"[22]—was not in conformity with Section 8.8(a)(i).[23]

Neither of the Defendant's arguments demonstrates that I should revisit my June 3rd bench ruling as to the may/will issue. As a preliminary matter, I note that the Defendant failed to raise in the June 3rd oral argument either of the contract interpretation arguments for which it now advocates on reargument, despite having

---

[20] *See id.* at 4 ("Accordingly, the 'will incur or pay' terminology of Section 8.8(a)(i) has no application to any Al Jazeera Claim Certificate that provides notice of a Third Party Claim under Section 8.10. If the AT&T, [DirecTV] and DISH claims are Third Party Claims, as Plaintiffs contend, then Al Jazeera's Claim Certificates for those claims, which notified Plaintiffs of Damages that Al Jazeera 'may' sustain, are in strict compliance with the Merger Agreement.").

[21] *Id.* at 6.

[22] Compl. Ex. 3.

[23] *See* Def.-Countercl. Pl. Al Jazeera America Holdings I, Inc.'s Mot. for Reargument at 5–8.

11

several months to consider the residual issues in the Rule 12(c) Motion as laid out in the Plaintiffs' letter of February 6th, and despite my clear preface to the parties at the June 3rd oral argument that, due to my interpretation of the indemnification provisions, "to the extent I find that any portion of the five [C]laim [C]ertificates is facially invalid [under Section 8.8(a)], the [D]efendant has lost its right to seek indemnification for the events covered by that portion."[24] Rather, the Defendant proceeded with its argument on the various issues concerning the facial validity of the five Claim Certificates without a single reference to Section 8.10, seemingly under the assumption, shared by the Plaintiffs and myself, that such facial validity was governed by Section 8.8(a) whether the events underlying these Claim Certificates constituted Third Party Claims or not. Having failed to raise at oral argument the contentions now serving as the foundation for its Motion for Reargument, it could be said that those arguments are untimely and the Motion must be denied.[25] However, I need not determine whether the Defendant's

---

[24] Oral Arg. Tr. 23:2–6 (June 3, 2015).

[25] *See, e.g., Oliver v. Boston Univ.*, 2006 WL 4782232, at *3 (Del. Ch. Dec. 8, 2006) ("The reach of a motion for reargument is limited. It 'may not be grounded on a new issue or contention that could have been raised at trial.' That, however, is what the [defendants] now attempt to do. Accordingly, this aspect of their motion for reargument must also be denied." (quoting *Magid v. Acceptance Ins. Co.,* 2001 WL 1641238, at *1 (Del.Ch. Dec.10, 2001)). The Defendant argues that it has not waived its contentions on reargument because it made the same contentions in its answering brief in opposition to the Plaintiffs' Rule 12(c) Motion. Def. and Countercl.-Pl. Al Jazeera America Holdings I, Inc.'s Reply Br. in Further Supp. of Its Mot. for Reargument at 3. I note that, while the Defendant's answering brief in opposition to the Motion for Judgment on the Pleadings could reasonably be interpreted to argue that Section 8.8 does not govern claims for indemnification involving Third Party Claims, it does not appear that this brief advanced the

arguments in its Motion for Reargument are improper as new arguments, because, even assuming they were raised in a timely manner, I find the arguments to be substantively without merit.

As I expressly made clear at the beginning of the June 3rd oral argument,[26] I interpret the unambiguous provisions of the Merger Agreement to require the Defendant to make *any* claim for indemnification against the escrow account through a Claim Certificate in accordance with Section 8.8, regardless of whether that claim involves a Third Party Claim. Section 8.8 is titled "Claims on Indemnification Escrow Fund." Although it does not expressly provide that all claims for indemnification against the escrow must abide by its terms,[27] other provisions of the Merger Agreement nonetheless make that clear. Specifically, Section 8.7(b) of Merger Agreement, which provides the mechanism by which the escrow funds are to be released, states that the business day following the termination of the escrow period the escrow agent *must* distribute the escrow cash pro rata to the Company's former members, "less that portion of such Escrow Cash that is necessary to satisfy all unsatisfied or disputed claims for indemnification *specified in any Claim Certificate delivered to the Members' Representative in*

---

specific arguments the Defendant has now raised on reargument. *See* Def. and Countercl. Pl., Al Jazeera Holdings I, Inc.'s Answering Br. in Opposition to Mot. for J. on the Pleadings at 14–17.
[26] *See* Oral Arg. Tr. 21:9–23:13 (June 3, 2015).
[27] *See* Gallagher Aff. Ex. A § 8.8(a) ("On or before the last day of the General Escrow Period . . . [the Defendant] *may* deliver to the Members' Representative a written notice signed by an authorized officer of [the Defendant] (a 'Claim Certificate') . . . ." (emphasis added)).

13

*accordance with Section 8.8* prior to the [escrow period terminating]."[28]  Further, Section 8.9 of the Merger Agreement, which governs the process for resolving any disputes over claims for indemnification made by the Defendant against the escrow account, applies only to claims made in a Claim Certificate.[29]  Notably, neither Section 8.7 nor Section 8.9 mentions Section 8.10, which section governs instead the written notice that the Defendant must deliver to the Members' Representative of any Third Party Claim against it so that the Members' Representative may elect to participate in or control in the defense of the Third Party Claim.[30]  In other

---

[28] *Id.* § 8.7(b) (emphasis added).

[29] *See id.* § 8.9(a) ("If the Members' Representative does not contest, by written notice to [the Defendant], any claim or claims by [the Defendant] *made in any Claim Certificate* within twenty (20) Business Days after any such Claim Certificate is deemed to have been given to the Members' Representative pursuant to the notice provision s in Section 11.7 (the 'Objection Period'), then the Members' Representative will be conclusively deemed to have Consented to the recovery by the Indemnified Parties of the full amount of Damages *specified in the Claim Certificate* . . . . The Escrow Agent shall be entitled to conclusively rely upon such failure to contest within the specified time period and the Escrow Agent shall distribute to [the Defendant] an amount of cash from the applicable Indemnification Escrow Account equal to the Damages *specified in the Claim Certificate.*" (emphasis added)); *id.* § 8.9(b) ("If the Members' Representative objects in writing to [the Defendant] . . . with respect to any claim or claims by [the Defendant] *made in any Claim Certificate* within the Objection Period, [the Defendant] and the Members' Representative shall attempt in good faith for thirty (30) Business Days after [the Defendant's] receipt of such written objection to resolve such objection." (emphasis added)).

[30] *See id.* § 8.10 ("If any Indemnified Party receives notice of the assertion or commencement of any Legal Proceeding made or brought by any Person who is not a party to this Agreement or an Affiliate of a party to this Agreement or a Representative of the foregoing (a 'Third Party Claim') against such Indemnified Party with respect to which the Company Members are obligated to provide indemnification under this Agreement, the Indemnified Party shall give the Members' Representative reasonably prompt written notice thereof, but in any event not later than thirty (30) days after receipt of such notice of such Third Party Claim. The failure to give such prompt written notice shall not, however, relieve the Company Members of their indemnification obligations, except and only to the extent that any Company Member is materially prejudiced by reason of such failure.  Such notice by the Indemnified Party shall describe the Third Party Claim in reasonable detail and shall indicate the estimated amount, if reasonably practicable, of the Damages that have been or may be sustained by the Indemnified

14

words, Claim Certificates under Section 8.8 preserve the escrow for the benefit of the Defendant. Notice under Section 8.10 serves an entirely different purpose—preserving the Plaintiffs' right to participate in the defense of any Third Party Claim.[31] While I imagine it is possible that the Defendant could, having become aware of a Third Party Claim against it, satisfy the written notice requirement in Section 8.10 concurrent with delivering a written claim for indemnification for that Third Party Claim, the written notice requirement in Section 8.10 is nevertheless separate from, and immaterial to, the issue of whether the written claim for indemnification was properly made. Rather, as Sections 8.7 and 8.9 make clear, that issue is governed by Section 8.8(a), whether the claim for indemnification in question stems from a Third Party Claim or not.

Further, I do not find that the use of "will" in Section 8.8(a)(i) and "may" in Section 8.10 creates an ambiguity as to the meaning of "will" in Section 8.8(a)(i). As I noted above, Section 8.8(a) and Section 8.10 do not set forth alternating or overlapping notice requirements, but rather independent notice requirements meant

Party. *The Members' representative shall have the right to participate in, or by giving written notice to the Indemnified Party, to control the defense of any Third Party Claim at the Members' Representatives* [sic] *expense and by the Members' Representative's own counsel, and the Indemnified Party shall cooperate in good faith in such defense.*" (emphasis added)).

[31] It is important to note the distinction between the use of the word "claim" in Section 8.7 and in Section 8.10. In Section 8.7, "claims" refers to claims for indemnification—the Defendant asserting its rights under the Merger Agreement to obtain a payment from the Company's former members in accordance with its indemnification rights. A "Third Party Claim," addressed in Section 8.10, is a legal claim asserted by a non-party to the Merger Agreement *against* the Defendant, with respect to which the Company's former members are obligated to indemnify the Defendant under the Merger Agreement. *See id.* § 8.10. Thus, a Third Party Claim is not itself a claim for indemnification, although it is highly likely to result in a claim for indemnification.

15

to accomplish different purposes. As such, I do not find it necessary, or appropriate, to bend the plain language of one provision in order to reconcile it with the language of the other. Instead, the disparity between the terms would indicate, if anything, that the parties intended there to be a difference between the certification required by the Defendant in the context of submitting a claim for indemnification against the escrow account and of providing notice of a Third Party Claim to the Members' Representative so that he could elect to participate in or control its defense.

For these reasons, I find the Defendant's arguments in its Motion for Reargument to be unsupported by the Merger Agreement. The Defendant has not shown that my bench ruling as to the may/will issue arose from a misapprehension of the facts or the law, let alone that such a misapprehension would have changed the course of that ruling. The Motion for Reargument is denied.

*C. Motion for Judgment on the Pleadings*

I now turn to the issues remaining in the Plaintiffs' Motion for Judgment on the Pleadings. In considering a motion brought under Rule 12(c) for judgment on the pleadings, the court must "view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party."[32] The moving party is entitled to judgment on the pleadings "only when no material issue

---

[32] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

16

of fact exists and the movant is entitled to judgment as a matter of law."[33]  Any material issue of fact is reserved for discovery and further proceedings.  It has often been said by this Court that Rule 12(c) "is a proper framework for enforcing unambiguous contracts because there is no need to resolve material disputes of fact."[34]  According to the law of Delaware, which applies to the Merger Agreement,[35] the Court will give binding effect to contract language where that language is plain and unambiguous.[36]  Contract language is ambiguous only where it is "susceptible to two or more reasonable interpretations."[37]

The Plaintiffs argue that the DISH Claim Certificate and the DirecTV Claim Certificate are invalid, both because they include allegedly impermissible "'placeholder' claims purporting to reserve escrow funds for hypothetical claims or demands [against the Defendant] by 'other' distributors or parties," and because "they fail to state the maximum amount that [the Defendant] reasonably believes will be incurred, as required by Section 8.8(a)(ii)."[38]  As I explain below, these arguments effectively present only one issue under the contractual language in question.

---

[33] *Id.*

[34] *Lillis v. AT&T Corp.*, 904 A.2d 325, 329–30 (Del. Ch. 2006).

[35] *See* Gallagher Aff. Ex. A § 11.6.

[36] *E.g., Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).

[37] *Norton v. K-Sea Transp. P'rs L.P.*, 67 A.3d 354, 360 (Del. 2013).

[38] Letter to the Court from Gregory V. Varallo dated February 6, 2015 ¶¶ 1, 4.

17

The Plaintiffs contend that the indemnification provisions of the Merger Agreement do not allow the Defendants to make a claim for indemnification for a demand that a distributor had not actually asserted against the Defendant prior to the escrow expiring—a so called "placeholder" claim— regardless of whether the Defendant anticipated that the distributor would make such a demand against it in the future.[39] In other words, the Plaintiffs argue that, to be timely, any claim by the Defendant for indemnification for Damages from the escrow must be made within the defined escrow period and be based upon Damages *then paid, incurred, or demanded*.[40] Of course, the parties could have contracted for this precise scheme. Upon review of the Merger Agreement, however, from which the parties' indemnification rights and obligations must necessarily stem, I cannot say, at this point in the proceedings, that the parties bargained for such a deadline.

---

[39] I use the term "'placeholder' claims" in this Letter Opinion because that is the designation given these particular claims by the Plaintiffs. In doing so, I do not meant to suggest that these claims are extra-contractual claims designed to maintain the escrow funds past what the parties intended in the Merger Agreement. Rather, I use the term "'placeholder' claims," and its antithesis, "'non-placeholder' claims," simply as a means to distinguish those demands for indemnification in the Claim Certificates that do not arise from a demand made against the Defendant by a third party during the defined escrow period from those demands for indemnification in the Claim Certificates that do arise from a demand made against the Defendant by a third party—or from Damages incurred or paid by the Defendant—during the defined escrow period. Also, consistent with the usage of the parties in briefing, I use the term "claim" in context to mean a demand for indemnification for Damages, both incurred and anticipated, against the escrow funds, and do not mean to refer to a "Claim," a defined term in the Merger Agreement.

[40] That is, Damages then paid or incurred by the Defendant, or Damages then demanded by a third party from the Defendant.

Article VIII of the Merger Agreement sets up a detailed indemnification system whereby the Defendant would set aside $75 million of the merger consideration in a general escrow account, from which account the former members would indemnify the Defendant for "all Damages suffered or incurred by [the Defendant] or to which [the Defendant] may otherwise become directly or indirectly subject (regardless of whether or not such Damages relate to a Third Party Claim), and that arise from or as a result of, or are directly or indirectly connected with," certain events enumerated in Section 8.3, including "any failure or inaccuracy of any representation or warranty made by the Company or the Members' Representative" in the Merger Agreement or related documents.[41] However, Section 8.7(a) provided that "the period during which claims for Damages *may be made* by any Indemnified Party against . . . the Escrow Cash of the General Indemnity Escrow Account . . . shall commence at the Closing and terminate on the date that is eighteen (18) months following the Closing Date."[42] As discussed above, in order for the Defendant to assert a claim for indemnification against the escrow account, the Defendant had to deliver to the Members' Representative a valid Claim Certificate pursuant to Section 8.8(a) within this 18-month escrow period.[43] Upon the conclusion of the escrow period,

---

[41] Gallagher Aff. Ex. A § 8.3 (emphasis added); *see also id.* §§ 2.2(a)(i), 8.1.
[42] *Id.* § 8.7(a)(i).
[43] *Id.* § 8.8(a).

19

the former members became entitled to the first automatic, pro rata distribution of the funds then remaining in the escrow account, "less that portion of Escrow Cash that is necessary to satisfy all unsatisfied or disputed claims for indemnification specified in any Claim Certificate delivered to the Members' Representative in accordance with Section 8.8 prior to the [escrow period ending]."[44]

As the provisions above show, the 18-month deadline contracted for by the parties pertains to the period of time in which the Defendant may *commence* a new *claim for indemnification* against the escrow account, not to the period of time in which the Defendant must pay or incur, or receive a demand for, the Damages underlying its claim for indemnification. Thus, the issue before me as to the so-called "placeholder" claims in the DISH Claim Certificate and the DirecTV Claim

---

[44] *See id.* § 8.7(b). I note that, with limited exceptions, none of which are applicable here, the parties also agreed that Company's representations and warranties, and the Defendant's "right to *commence* any claim [against the former members] with respect thereto pursuant to Section 8.3," would likewise expire following the 18-month escrow period. *Id.* § 8.2 (emphasis added). However, Section 8.2 expressly provides:

> If written notice of a claim has been given prior to the expiration period for the applicable representation, warranty or covenant by an Indemnified Party to the Company, then the relevant representation, warranty or covenant (together with the associated rights of indemnification) *shall survive as to such claim until such claim has been finally resolved.*

*Id.* (emphasis added). Any escrow cash held following the 18-month period for a pending but unresolved claim that is not awarded to the Defendant upon resolution of the claim by the parties or courts must be distributed to the Company's former members within ten business days of the claim's resolution. *Id.* § 8.7(c).

Section 8.2 further provides that certain of the Company's representations and warranties identified as "Fundamental Representations" and "Statutory Representations," together with the Defendant's right to commence a claim for indemnification with respect thereto pursuant to Section 8.3, are to survive indefinitely, as is the Defendant's right to commence a claim for indemnification for any of the indemnifiable events covered by Section 8.3 other than breaches of representations and warranties. *Id.* § 8.2.

20

Certificate is whether, and to what extent, the Company's former members granted the Defendant the contractual right to *commence* a *claim for indemnification* against the escrow account where the Defendant alleges it has identified an indemnifiable event, but that event has not yet materialized into any third-party demands against the Defendant. In the absence of any specific statement in the Merger Agreement resolving this question, it seems to me that the answer lies in Section 8.8(a), the provision setting forth the requirements for the commencement of a claim for indemnification against the escrow account. To the extent that the Defendant's "placeholder" claims in the DISH Claim Certificate and DirecTV Claim Certificate can and do comply with the requirements of Section 8.8(a), the parties have contractually agreed that these claims are preserved for adjudication on the merits. In other words, although the Plaintiffs in their February 6th letter identified the "placeholder" claims issue as separate from the issues concerning the facial validity of the five Claim Certificates, I find them to be, in fact, the same.[45]

---

[45] The Plaintiffs cite this Court's decision in *Winshall v. Viacom International Inc.*, 2012 WL 6200271 (Del. Ch. Dec. 12, 2012), for the proposition that the nature of indemnification is such that, in the context of escrow arrangements like the one here, a claim for indemnification can only be made where the claimant has first received a demand from a third party. *See, e.g.*, Oral Arg. Tr. 78:14–86:14 (June 3, 2015). However, the Plaintiffs overstate the rationale of *Winshall* and, in so doing, misstate the issue now before me. *Winshall* simply stands for the proposition that the contractual language controls the availability of indemnification. That very principle underlies what I have identified to be the issue here: In what circumstances, under the Merger Agreement, is the right to indemnification from the escrow account extended beyond the 18-month escrow period?

With this in mind, I turn to Section 8.8(a), which provides that a valid Claim Certificate commencing a claim for indemnification on the escrow account must:

> (i) stat[e] that an Indemnified Party has incurred or paid, or that it reasonably believes it will incur or pay Damages;
> (ii) stat[e] the amount of such Damage (which, in the case of Damages not yet incurred or paid, may be the maximum amount reasonably believed by [the Defendant] to be demanded by a third party, incurred or paid); and
> (iii) specify[] in reasonable detail (based upon the information then possessed by [the Defendant]) the nature of the claim to which such Damages are related.[46]

I have already found in my June 3rd bench ruling that the DISH Claim Certificate and the DirecTV Claim Certificate comply with subsection (iii); each includes reasonable detail about the nature of the claims for indemnification asserted therein, including the "placeholder" claims. Thus, I need only consider here whether the "placeholder" claims in the DISH Claim Certificate and the DirecTV Claim Certificate comply with subsections (i) and (ii).

With regard to subsection (i), I have already determined, at oral argument and again above on reargument—that the DirecTV Claim Certificate does not satisfy the subsection (i) requirement because the Defendant did not certify that it believed it "will" incur Damages as a result of the alleged MFN violation, but I also resolved that the parties could develop a factual record as to whether that defect was material such that it nullifies the corresponding portions of that Claim

---

[46] Gallagher Aff. Ex. A § 8.8(a).

22

Certificate. To the extent that that ruling applied only to the claim for $32 million in indemnification arising from the DirecTV demand (*i.e.*, the "non-placeholder" claim), I now expressly extend it to cover the "placeholder" claim in the DirecTV Claim Certificate concerning Comcast, which claim suffers from the same defect.[47] As to the DISH Claim Certificate, I note that, although the Plaintiffs did not include this Claim Certificate in their articulation of the may/will issue in the February 6th letter, they nevertheless contended at oral argument that the "placeholder" claims therein also fell short of the requirement in subsection (i).[48] As I indicated at oral argument, however, the DISH Claim Certificate does include certifications that, as a result of the MFN violation alleged therein, the Defendant "believes that it *will* eventually be required to make a payment to DISH," and "believes that it *will* eventually be required to make payments to each of its other affiliate distributors."[49] Thus, on its face, the DISH Claim Certificate has met the subsection (i) requirement for both the "non-placeholder" claim concerning DISH and the "placeholder" claims concerning the three other distributors.

That leaves, as the final prong in the "placeholder" issue analysis, subsection (ii). This portion of the "placeholder" issue analysis is thus subsumed by the last

---

[47] I note that the distinction between a certification that the Defendant "will" incur Damages and a certification that the Defendant "may" incur Damages seems to me to take on an even greater significance in the context of a "placeholder" claim, but I will nevertheless leave that determination for further factual development.

[48] *See* Oral Arg. Tr. 76:23–77:2 (June 3, 2015).

[49] Compl. Ex. 2 (emphasis added).

remaining issue in the Plaintiffs' Rule 12(c) Motion: whether *any* of the claims for indemnification in the DISH Claim Certificate or the DirecTV Claim Certificate are facially defective because, as the Plaintiffs put it, "they fail to state the maximum amount that [the Defendant] reasonably believes will be incurred, as required by Section 8.8(a)(ii)."[50] I note first that the Plaintiffs' recitation of the requirement in subsection (ii) is too narrow, in that on its face subsection (ii) allows the Defendant to state a figure for Damages "to be demanded by a third party," as well as a figure for Damages "to be . . . incurred or paid." It is also fair to say that the language in subsection (ii), particularly of the parenthetical clause, is poorly drafted and unclear. For purposes of this analysis on a Motion for Judgment on the Pleadings, however, I need not determine the proper construction of the contract language; it is enough for me to determine that the Plaintiffs' interpretation is not the only reasonably one. In other words, it is enough for me to determine that a reasonable interpretation of subsection (ii) is that, where, like here, the Defendant makes a claim for indemnification but has not yet incurred a liability or made a payment for the underlying event, the Defendant may satisfy subsection (ii) by stating the maximum amount of Damages it believes will ultimately be demanded, incurred, or paid, so long as the belief is reasonable and is stated in connection with a right to indemnification then identified in compliance

---

[50] Letter to the Court from Gregory V. Varallo dated February 6, 2015 ¶ 4.

24

with subsection (iii). I find that such an interpretation is reasonable given the poor drafting of the clause. Because the DISH Claim Certificate makes statements sufficient to comply with this reasonable interpretation, as to both its "non-placeholder" claims and "placeholder" claims, the Plaintiffs are not entitled to a judgment at this point in the proceedings that these claims are facially invalid under Section 8.8(a)(ii).

As to the DirecTV Claim Certificate, however, I note that, whereas the DISH Claim Certificate specifically states that it may face up to $40 million in future Damages for the alleged MFN violation[51]—up to $10 million for the "non-placeholder" claim regarding DISH's demand and up to $30 million for the "placeholder" claims regarding three other distributors who may bring similar demands—the DirecTV Claim Certificate leaves its maximum Damages figure open-ended. It states only that DirecTV has demanded $28.5 million for a MFN violation, which demand may result in up to $32 million in Damages when future attorneys' fees and expenses are added; that other distributors may assert demands similar to the DirecTV demand; that Comcast is an example of one such distributor; and that, if Comcast made such a demand, it would compare to the $28.5 million being sought by DirecTV. This is sufficient to survive a Motion for Judgment on the Pleadings with respect to the DirecTV and Comcast claims, but

---

[51] Not including attorneys' fees.

not for the unidentified "other distributor" claims. Although I have not arrived at a definitive interpretation of subsection (ii), there can be no reasonable interpretation of that provision in any context that would permit a claim for indemnification based on an open-ended statement of Damages; it unequivocally requires *some* concrete Damages figure, paid, incurred, or projected.[52] Thus, the Plaintiffs are entitled to a judgment that, except for the claim for $420,000 plus interest for audit expenses and attorneys' fees already incurred, the claim for up to $32 million for potential future Damages arising from the DirecTV demand, and the claim for up to $28.5 million for potential future Damages arising from a similar Comcast demand, the DirecTV Claim Certificate is facially invalid under Section 8.8(a)(ii).

*D. Surviving Claims for Indemnification*

By way of summarizing the Court's rulings on the Plaintiffs' Motion for Judgment on the Pleadings, the following is an exhaustive list of those claims for indemnification that remain for further adjudication:

1) In the DISH Claim Certificate: the claim for $1.37 million plus interest for audit expenses and attorneys' fees and expenses already incurred; the claim for up to $10 million for the DISH demand; the claim for up to $30 million for potential demands by

---

[52] *See* Oral Arg. Tr. 57:15–59:7 (June 3, 2015) (relying on the same principle to rule certain portions of the AT&T Claim Certificate facially defective under Section 8.8(a)(ii)).

three other distributors; and the claim for up to $5 million for future attorneys' fees and expenses related to these demands;

2) In the DirecTV Claim Certificate: the claim for $420,000 plus interest for audit expenses and attorneys' fees and expenses already incurred; the claim for up to $32 million for the DirecTV demand, including future attorneys' fees and expenses; and the claim for up to $28.5 million for a potential similar demand by Comcast;

3) In the AT&T Claim Certificate: the claim for $225,000 for the AT&T demand; and the claim for $1.74 million plus interest for attorneys' fees and expenses already incurred; and

4) In the CBS/TWC Claim Certificate: the claim relating to Time Warner Cable Inc. for $500,000 plus interest already incurred.

*E. Conclusion*

To the extent that my ruling in Part B of this Letter Opinion requires an order to take effect, IT IS SO ORDERED.

The parties should confer and submit an appropriate form of order to the Court disposing of the Plaintiffs' Motion for Judgment on the Pleadings.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III